IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**APRIL DIXON**                                                              **PLAINTIFF**

**VS.**                             **CASE NO. 3:17CV00302 PSH**

**NANCY A. BERRYHILL, Commissioner,**
   **Social Security Administration**                              **DEFENDANT**

**ORDER**

    Plaintiff April Dixon ("Dixon"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny her claim for Supplemental Security Income benefits (SSI), contends the Administrative Law Judge's (ALJ) decision that she is not disabled is not supported by substantial evidence. Specifically, Dixon faults the ALJ for: (1) failing to find she met Listing 12.05C, and; (2) in the alternative, even if she did not meet Listing 12.05C, the ALJ erred in finding she could perform other work in the economy. The parties have ably summarized the medical records and the testimony given at the administrative hearings. The relevant period to be examined is from July 11, 2006, Dixon's alleged onset date, through June 29, 2016, the date of the ALJ's decision.

    *A Brief History:*

    An initial administrative hearing was conducted in February 2009. (Tr. 87-104). A May 2009 ALJ's decision denied benefits. (Tr. 111-120). The Appeals Council remanded the case to obtain additional evidence, including a consultative psychiatric examination. (Tr. 121-125). A

second administrative hearing was conducted in November 2009, followed by a December 2009 decision by the ALJ denying benefits. (Tr. 126-145, 126-145). The Appeals Council again remanded, in January 2011, finding the ALJ did not comply with the earlier instructions of the Appeals Council. (Tr. 146-149). October 2011 brought the third administrative hearing. (Tr. Tr. 7-25). In November of that year the ALJ denied benefits, and the Appeals Council denied Dixon's request for review. (Tr. 28-48, 1-5).

Dixon then filed suit in this Court. In an October 2013 decision, United States Magistrate Judge H. David Young remanded the case, directing the ALJ to re-consider, *inter alia,* if Dixon met Listing 12.05C. (Tr. 631-640). A fourth administrative hearing was held in August 2014. (Tr. 549-573). The ALJ denied benefits in September 2014. (Tr. 647-658). This was followed by a remand by the Appeals Council in November 2014. (Tr. 667-670).

A fifth and final administrative hearing occurred in June 2016. (Tr. 574-597). The ALJ denied benefits, finding Dixon suffered from a mild intellectual disability but that she does not meet Listing 12.05C and has the residual functional capacity ("RFC") to perform unskilled work with no contact with the public. (Tr. 517-537). The Appeals Council denied Dixon's request for review, rendering the ALJ's June 2016 decision as the final decision of the Commissioner. Dixon now appeals this ruling.

Pertinent findings from the five prior hearings are listed below:

**\*      Dixon I**
Decision date: 05/19/09
Severe Impairments Found: hypothyroidism, foot pain, borderline intellectual functioning.
RFC: Unskilled, light work.
Jobs: Housekeeping.


**\*      Dixon II**

Decision date: 12/15/09
Severe Impairments: borderline intellectual functioning, hypothyroidism.
RFC: full range of work at all exertional levels with numerous non-exertional limitations.
Jobs: Garment bagger, rack loader, sorter of wood products.

**\*      Dixon III**
Decision date: 11/03/11
Severe Impairments: borderline intellectual functioning, hypothyroidism.
RFC: full range of work at all exertional levels with numerous non-exertional limitations.
Jobs: laundry worker at a nursing home, restaurant kitchen helper.

**\*      Dixon IV**
Decision date: 09/02/14
Severe impairments: impaired intellectual functioning.
RFC: full range of work at all exertional levels with numerous non-exertional limitations.
Jobs: dishwasher, cook's helper.

**\*      Dixon V**
Decision date: 06/29/16
Severe impairment: mild intellectual disability
RFC: full range of work at all exertional levels with the following non-exertional limitations: work must be unskilled, defined as work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, involves few variables, requires little independent judgment and the supervision required is simple, direct, and concrete, and Dixon cannot deal with the general public.
Jobs: poultry icer, production helper.

*The Fifth Administrative Hearing:*

Dixon, 30 years old, stated she had finished the ninth grade and had not sought a GED. She indicated she was in special education classes and repeated grades in school. She stated she did not know why she dropped out of school. Dixon testified she lived in an apartment with her ten year old son and twelve year old daughter. Dixon weighed about 150 pounds five years earlier, but testified her thyroid disorder contributed to a significant weight gain, resulting in her 2014 weight of 263 pounds. According to Dixon, her mother helped with taking care of the kids. Dixon said she could not read a newspaper, could not make a shopping list, could not use a shopping list if one were given to her, and could not count change. She stated she obtained her driver's license when she was

3

24, and that the questions on the examination were read to her. She owns a car, but it is not registered, according to Dixon, and it has been parked for a year. Dixon related taking medication for depression, thyroid issues, iron deficiency, knee pain, and for sleep issues. She identified side effects of weakness and losing her hair.

As for daily activities, she indicated she slept poorly despite the sleep medication, dressed her kids for school and prepared their breakfast, and during the summer might go to church or the park with her kids and mother. She watches television but does not socialize with friends or relatives, according to Dixon. (Tr. 578-594).

Diane Smith ("Smith"), a vocational expert, testified Dixon had not performed substantial gainful activity in her employment history. The ALJ posed a hypothetical question to Smith, asking her to assume a worker of Dixon's age, education, and experience, who had no exertional or physical limitations, but was restricted to unskilled work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote and involved few variables, required little independent judgment, where the supervision required was simple, direct, and concrete, and where the worker could not deal with the general public. Smith responded that such a worker could perform some jobs, such as poultry icer or production helper. A second hypothetical question was posed, assuming the worker was mentally capable of performing less than unskilled work. Smith identified no jobs for the worker described in the ALJ's second hypothetical question. (Tr. 595-596).

*ALJ's Decision:*

In his June 29, 2016, decision, the ALJ determined Dixon had the severe impairment of mild intellectual disability. The ALJ addressed other impairments, finding Dixon's thyroid issues,

4

hypertension, obesity, anemia, left knee pain, depressive disorder, and headaches were non-severe in nature. The ALJ specifically found Dixon did not have an impairment or combination of impairments that met or equaled a Listing. In reaching this conclusion, the ALJ specifically addressed Listing 12.05. The ALJ addressed the paragraph "B" criteria, finding Dixon had mild limitations in daily activities, moderate limitations of social functioning, moderate limitations in the ability to maintain concentration, persistence, and pace, and that she had no episodes of decompensation. The ALJ determined Smith had the RFC to perform work at all exertional levels with the restrictions which mirrored those posed to Smith in the ALJ's first hypothetical question. Relying upon Smith's testimony regarding the availability of jobs, the ALJ ruled Dixon was not disabled. (Tr. 520-537).

We now consider Dixon's arguments.

**The ALJ erred in failing to find Dixon met Listing 12.05C.**

To meet Listing 12.05C, a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Maresh v. Barnhart*, 438 F.3d at 898-899. *See also Cheatum v. Astrue*, 388 Fed. Appx. 574 (8th Cir. 2010) (the introductory language of Listing 12.05 requires a plaintiff to demonstrate she suffered deficits in adaptive functioning). The parties are at odds over the first and the third prerequisites — there is no debate on whether there was an onset of the impairment before age 22.

Dixon was administered IQ tests on two occasions, and underwent two additional mental evaluations. First, Dr. Mary Ellen Ziolko ("Ziolko") tested Dixon in 2004. Ziolko did not consider the test results valid, finding Dixon did not "appear to be trying to do her best." (Tr. 354).

5

Malingering was cited as a possible explanation. In 2006, Dr. George M. DeRoeck ("DeRoeck") performed a consultative psychological evaluation, including IQ testing. The results were a verbal IQ of 61, a performance IQ of 62, and a full scale IQ of 58. (Tr. 394). Although DeRoeck acknowledged that his assessment was likely an underestimation of Dixon's true ability, the IQ test results were not, as in the case of Ziolko, deemed invalid.

In 2011 Dixon was sent to DeRoeck for another mental evaluation. DeRoeck diagnosed her with intermittent explosive traits and mental retardation. DeRoeck conceded that he "could readily see that Ms. Dixon could be construed as malingering" but found she was not embellishing her deficits. (Tr. 488). He found Dixon's capacity to deal with the typical cognitive demands of basic work-like tasks was limited by her impairments, and that her frustration and limited comprehension may interfere with even basic work-like tasks. (Tr. 488).

In 2016 Dixon was seen by consultative examiner Dr. Samuel B. Hester ("Hester"), who diagnosed depressive disorder NOS, rule out intellectual disability, hypothyroidism, and knee pain. Hester opined Dixon could cope with the mental demands of basic work tasks if the tasks were simple. He also opined she could complete work tasks in an acceptable timeframe if the tasks were simple. He found Dixon to have the ability to attend to and sustain concentration on basic tasks, and she had the ability to sustain persistence in completing the tasks. (Tr. 1034). Hester also executed a Medical Source Statement in which he indicated Dixon would have marked impairments in her ability to understand and remember simple instructions, carry out simple instructions, and to make judgments on simple work-related decisions. (Tr. 1037-1039).

The evidence of record, including the IQ tests and the mental evaluations, demonstrate Dixon has a valid verbal, performance, or full scale IQ of 60 through 70. Accordingly, she satisfies the first

of the three prongs necessary to meet Listing 12.05C.

Since there is no debate concerning the second prong, our inquiry is whether Dixon has met the Listing by showing she has a physical or other mental impairment imposing an additional and significant work-related limitation of function. She alleges three impairments satisfy this requirement: (1) obesity; (2) hypothyroidism; and (3) additional mental impairments.

Dixon correctly notes that she is morbidly obese, having been diagnosed as such in June 2009. (Tr. 1030). In 2013 she was measured at five foot six, 268 pounds, with a BMI of 43.07. (Tr. 962-966). Dixon weighed 265 in 2016. (Tr. 1055). Dixon also cites Social Security Ruling 02-1p, which categorizes her BMI as "extreme," which represents the greatest risk for developing obesity-related impairments. In her brief, Dixon states that "persons suffering from extreme obesity experience restrictions such as reduced mobility and endurance." Docket entry no. 13, page 25. Lacking from Dixon's statements and arguments is any evidence that *she*, as opposed to unspecified "persons," has functional limitations due to her obesity. *See Box v. Shalala*, 52 F.3d 168 (8th Cir. 1995) (claimant, although diagnosed as obese, offered no testimony or medical evidence of functional limitations imposed by his weight).

The ALJ conceded Dixon's obesity but found she had not alleged it to be a disabling condition in her paperwork or in her testimony. The ALJ specifically found "there is no indication that the claimant's obesity imposes any additional limitations in her daily functional ability." (Tr. 523). This conclusion is buttressed by the findings of the medical care providers, beginning in 2006 when Dr. Kevin Ganong ("Ganong") diagnosed Dixon as mildly overweight (165 pounds) but able to bend, lift, and twist without difficulty. (Tr. 395). Treating physician Ken Dill ("Dill") examined Dixon from 2008 through 2011, finding her with full strength in upper and lower extremities, and

7

no acute distress.[1] These findings are consistent with the treatment notes of Dr. Suresh Patel, in 2011, and APRN Jimmy Ballard, from 2013 to 2016. In February 2016, Dixon was seen by Dr. Donita Keown ("Keown"), complaining of pain that limits her toleration for periods of walking and standing. (Tr. 1041). Keown found no musculoskeletal atrophy and noted full range of motion to joints of the right lower limb, bilateral hands, wrists, elbows, and shoulders. Keown further noted Dixon presented with "an exaggerated left-sided limp." (Tr. 1042). However, Keown found no limp "whatsoever" when observing Dixon as she exited the facility. According to Keown, Dixon "did not provide reliable effort" and Keown opined Dixon "would be expected to sit, stand, walk, lift, and carry without specific restriction or limitation." (Tr. 1042-1043).

Dixon fails to demonstrate her obesity is an additional and significant work-related limitation of function. Substantial evidence supports the ALJ's determination that her obesity imposed no additional limitation in Dixon's daily functional ability. As a result, the impairment of obesity does not satisfy the requirements of Listing 12.05C.

Dixon next contends that her hypothyroidism is an additional and significant work-related limitation of function under the Listing 12.05C formulation. The record shows previous findings by ALJs that Dixon's hypothyroidism was a severe impairment. See Dixon I, Dixon II, and Dixon III. These determinations were made in May and December 2009, and in November 2011, respectively. In Dixon IV, from September 2014, the ALJ found hypothyroidism to be nonsevere. The ALJ cited Dixon's frequent noncompliance with treatment, an October 2013 treatment note

---

[1] For example, Dixon weighed about 240 pounds in December 2008 (Tr. 437) and about 257 pounds in August 2011 (Tr. 500). On both occasions Dill found Dixon to be well developed, well nourished, and without acute distress, and on later exams he rated her as 5 out of 5 on muscle strength in the upper and lower extremities.

indicating failure to take thyroid medication for two years without significant symptoms, and her testimony of taking no thyroid medication at the time of the hearing. (Tr. 650). The most recent ALJ decision, Dixon V, details the medical records from 2004, when Dixon reported a history of hypothyroidism.[2] The ALJ found Dixon stopped taking her prescribed thyroid medication in 2008, again for a two year period beginning in 2011, and once again in 2014. In 2011, treating physician Ryan Brenza ("Brenza") saw Dixon, who reported she could not work due to excessive fatigue from hypothyroidism.[3] Dixon brought disability paperwork to the appointment. Brenza summarized his plan following the visit: "I notified patient that I did not believe I see a reason she cannot work. I believe we can get her TSH[4] level normalized and if not would send to endocrinologist for further eval. Most of the paperwork included more of a Functional capacity eval. which I can not do accurately in this clinic setting. I recommended she make an appt with PT whom may better serve in her abilities listed on forms. I generally don't believe hypothyroidism or hypertension to be adequate diagnoses for disability." (Tr. 972).

The Court finds that substantial evidence supports the ALJ's finding that hypothyroidism

---

[2] Dixon reported hypothyroidism to Dr. Samuel B. Hester (Hester") in January 2016. Hester performed a consultative mental evaluation and included hypothyroidism among his diagnoses. However, Hester did not test for thyroid issues, and his inclusion of the hypothyroidism may be tied only to Dixon's self-reporting. (Tr. 1028, 1033).

[3] The medical records show Dixon reported fatigue on occasion during the relevant period. Berryhill concedes that this occurred on seven occasions. However, Berryhill also cites twelve occasions during the relevant period when Dixon expressly denied fatigue and weakness. Docket entry no. 14, page 9.

[4] TSH stands for "thyroid stimulating hormone" and a TSH test measures whether the gland is functioning properly. An underactive thyroid gland, hypothyroidism, is typically treated by daily ingestion of synthetic thyroid hormone by pill. See www.webmd.com/women.what-is-tsh-test#1.

does not constitute an additional and significant work-related limitation of function within the meaning of Listing 12.05C. The medical evidence over the entire relevant period is ample, and Dixon's daily activities, including the numerous duties associated with raising young children, strongly support the ALJ's conclusion.

Dixon, citing Hester's October 2016 report, alleges additional mental impairments constitute an additional and significant work-related limitation of function which result in her satisfaction of Listing 12.05C. We have previously described Hester's findings, including both his report and the medical source statement. The ALJ, in Dixon V, found the depressive disorder did not cause more than a minimal limitation on Dixon's ability to perform basic work activities. Accordingly, the ALJ concluded the depressive disorder was non-severe. In reaching this conclusion, the ALJ found Dixon did not allege depression to be a disabling condition and had no history with a mental health specialist. The ALJ also noted the timing of Hester's diagnosis of depressive disorder, finding that the January 2016 finding pre-dated the ALJ's opinion by roughly five months, thus failing to meet the durational requirements of the Social Security Act (requiring an impairment to be severe for a continuous period of twelve months). Finally, the ALJ thoroughly considered Hester's report, highlighting the internal inconsistency between Hester's report, finding Dixon able to sustain persistence in completing tasks and able to complete work tasks within acceptable time demands, and Hester's medical source statement checklist, finding she had marked impairments with understanding, remembering and carrying out simple instructions. The ALJ gave little weight to Hester's medical source statement findings due to its inconsistency with his own report, as well as with the remainder of the medical records. (Tr. 534). Substantial evidence supports the ALJ's consideration of Dixon's depressive disorder and his finding that this impairment was non-severe

and not an additional and significant work-related limitation of function as required to meet Listing 12.05C.

In summary, Dixon's first claim is without merit, as she fails to establish she met the Listing. We now address her second and final assertion.

**The ALJ erred in finding she could perform other work in the economy.**

Relying upon Smith's vocational expert testimony, the ALJ found jobs existed which Dixon could perform. Smith was asked to assume a worker of Dixon's age, education, and experience, who had no exertional or physical limitations, but was restricted to unskilled work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote and involved few variables, required little independent judgment, where the supervision required was simple, direct, and concrete, and where the worker could not deal with the general public.

Dixon argues that the ALJ erred by not including in the hypothetical a limitation for simple work instructions. Our review of the parameters of the hypothetical question persuades us that an additional limitation for simple work instructions would not have enhanced the question. The vocational expert, Smith, was directed by the ALJ to limit the jobs to, among other things, unskilled work involving few variables and simple, direct, and concrete supervision. Work with few variables is, by its own description, simple. Simple supervision also suggests the job is not complex. Further, Smith was directed to assume a worker with Dixon's educational background, which was a ninth grade education. The ALJ's hypothetical query was adequate and understandable, it captured the concrete consequences of Dixon's deficiencies, and it need not have included a limitation for simple work instructions in order for Smith to ably answer the question. *See, e.g., Roe v. Chater*, 92 F.3d 672, 674 n. 2 (8th Cir. 1996).

Further, the Court finds that substantial evidence supports the ALJ's findings which resulted in the RFC determination. The hypothetical question was based upon the RFC findings. It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Here, the ALJ thoroughly considered the medical evidence, the absence of limitations imposed by the numerous treating physicians, the evidence of noncompliance, Dixon's daily activities, her credibility, and the absence of any opinion from a treating or examining physician that Dixon is disabled. There was no error in the decisions which led to the initial hypothetical question posed to Smith, nor any error in its formulation.

The ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Dixon's complaint is dismissed with prejudice.

IT IS SO ORDERED this 16th day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE